No. 25 - _____

**In the United States Court of Appeals
for the Ninth Circuit**

In re CORONAVIRUS REPORTER CORPORATION, CALID INC.,
and GREENFLIGHT VENTURE CORPORATION,

*Petitioners,*

*v.*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA,

*Respondent,*

*and*

APPLE INC.

*Real Party in Interest.*

On Petition for a Writ of Mandamus to the United States District Court
for the Northern District of California
No. 3:24-cv-08660 (Chen, J)

**PETITION FOR A WRIT OF MANDAMUS**

KEITH MATHEWS
AMERICAN WEALTH PROTECTION
1000 Elm Street #800
Manchester, NH 03101
(603) 622-8100
*Attorneys for Petitioners*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................... iv

CORPORATE DISCLOSURE STATEMENT ......................................................... 1

INTRODUCTION .................................................................................................... 1

JURISDICTION ....................................................................................................... 4

ISSUES PRESENTED ............................................................................................. 5

STATEMENT OF THE CASE ................................................................................. 6

    I.   The Parties and Their Roles ................................................................. 6

    II.  Nature of the Dispute and Claims ........................................................ 8

    III. Procedural History .............................................................................. 9

REASONS THE WRIT SHOULD ISSUE ............................................................. 12

    I.   The Anti-SLAPP / Erie Error: Punishing Petitioners for Invoking the Very Immunity that Should Have Struck Apple's Vexatious Litigation Claim ................................................................................... 12

    II.  The Sanctions Order Rests on a Cascade of Clear Errors in Res Judicata .............................................................................................. 21

        A.  *Shields* and the Evolution of Platform Antitrust Law Made Refiling Objectively Reasonable ...................................................... 21

        B.  Greenflight Is a New Plaintiff That Was Never, and Could Never Have Been, Bound by CR I ................................................................ 23

        C.  *Lawlor* New Conduct Doctrine Overwhelmingly Supports CR II and Was Brushed Aside ................................................................... 26

        D.  Apple's "Null Entity" Debacle Sanctions Petitioners for Relying upon Respondent's Own Judicial Representations ........................... 27

        E.  The Tying Claim Was Ignored, Not Adjudicated; Reasserting a Core Theory Left in Judicial Limbo Is Not Harassment ................... 29

        F.  *Roundtree* and *Estate of Blue* Are Inapposite; Using Them to Sanction *Lawlor* Mandated Claims Is Legal Error ........................... 30

        G.  The Motions Swept into the OSC Were Necessary Procedural Countermeasures .......................................................................... 32

III. Mandamus Is Warranted Under *Bauman* Because the District Court's Structural Errors Impose Existential Harm That No Later Appeal Can Cure......................................................................................................... 33

CONCLUSION ............................................................................................. 35

# TABLE OF AUTHORITIES

**Cases**

*Baral v. Schnitt*, 1 Cal. 5th 376, 384–95 (2016)...................................................... 12

*Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004)...................................... 33

*Coronavirus Reporter v. Apple Inc.*, No. 3:21-cv-05567-EMC .............................. 6

*DC Comics v. Pacific Pictures* 706 F.3d 1009, 1013–14 (9th Cir. 2013) .............. 13

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) ............................................... 13

*Hanna v. Plumer*, 380 U.S. 460, 471–74 (1965) ..................................................... 13

*Hilton v. Hallmark Cards* 599 F.3d 894, 901–02 (9th Cir. 2010) .......................... 13

*Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955) ............................ 26

*Makaeff v. Trump University, LLC* 715 F.3d 254, 261–63 (9th Cir. 2013)............ 13

*Navellier v. Sletten*, 29 Cal. 4th 82, 90–92 (2002) .................................................. 13

*Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993) ........................... 23

*Shields v. World Aquatics*, No. 23-15092 (9th Cir. Sept. 17, 2024)....................... 21

*Taylor v. Sturgell,* 553 U.S. 880, 891–93 (2008) ................................................... 23

*U.S. ex rel. Newsham v. Lockheed Martin* 190 F.3d 963, 971–73 (9th Cir. 1999)  13

*United States v. High Country Broad. Co.,* 3 F.3d 1244, 1245 (9th Cir. 1993)..... 23

**Statutes**

Cal. Civ. Proc. Code § 425.16 ................................................................................. 12

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Coronavirus Reporter Corporation, CALID Inc, and Greenflight Venture Corporation have no parent corporation and no publicly held corporation owns 10% or more of the entity's stock.

## INTRODUCTION

This petition arises from a simple but nationally important question: can Apple use the courts to bankrupt and silence the first developers who challenged its App Store censorship and technical tying practices, before any court has ever adjudicated the core tying theory on the merits. The underlying case affects nearly every person's liberty to use smartphone software of their choosing, in the same way electronic device consumers, for almost a century, were free to watch content without first seeking approval from their TV or VCR manufacturer.

Beginning in 2020, Coronavirus Reporter alleged that Apple uses its iPhone hardware monopoly to force all iOS software through a single, censored App Store and a mandatory notarization gatekeeper, and that those restraints violate the Sherman Act by eliminating critical competition between independent publishers. That theory has since been echoed, in substance, by the Department of Justice's 2024 complaint in *United States v. Apple*, and virtually identically in later private suits such as *ProtonMail* and *PhantomAlert*. Yet mysteriously no court has ever applied

*Northern Pacific* or *Jefferson Parish* to Apple's device–App Store–notarization tie. In CR I the case was dismissed on pleading grounds, and tying was never reached. Petitioners filed CR II as a class action that still does what no other case presently accomplishes: it combines a refined tying theory with years of new conduct (*Epic* 'malicious compliance', new DPLA terms, and the EU DMA Core Technology Fee) and adds a new corporate plaintiff, Greenflight (never a party in *CR I*) to create a generalized developer class.

For Apple, the progression of iPhone tying cases is an existential threat. Despite downplaying to the courts that *CR I* was 'in the hinterlands,' Gibson Dunn publicly touted its Law360 "Competition Group of the Year" accolade that "got Apple off the hook" for the "$200 billion developer class action". Apple knows that the pernicious tying claim is where their monopoly is most legally vulnerable (*Epic* demonstrated a rule of reason trial can be made infinitely complex) and sensed a growing movement of awareness into regulating the practice. Apple frequently cited *CR I* in motions to dismiss cases like ProtonMail and PhantomAlert. CR II therefore attempts to put Apple back on the hook with a stronger record and an additional class representative. Thus, Apple needed to ensure CR II did not succeed.

Apple did not respond with a motion to test tying on the merits. Within a month of pointing out the Law360 hypocrisy to the District Court, the monopolist wrote up a retaliatory SLAPP against Petitioners. In doing so, Gibson Dunn had to

overcome one substantial problem with invoking Rule 11. The pleading document itself was almost verbatim to the government antitrust case, and compounding that, it was signed off on by an objective former AUSA with antitrust experience, who moreover, had been consulted about the CR I dismissal.  Accordingly, Gibson Dunn devised a sprawling "hybrid sanctions" motion under Rule 11, § 1927, and inherent power that, in all but name, functions as a de facto vexatious litigation suit. It seeks legal fees which, if uncapped, would be in the tens of millions of dollars, revocation of counsel's admission, and a nationwide injunction barring Petitioners, their counsel, and unspecified "associates" from ever suing Apple again, anywhere.

Petitioners responded as California law instructs, by filing a § 425.16 anti-SLAPP motion. Under § 425.16, Apple needed to prove likelihood to prevail, which was simply not reasonable given extensive *Lawlor* new conduct, *Taylor/Rowland* privity problems, and *Shields*/DOJ developments. Yet the District Court sanctioned Petitioners, contrary to a multitude of objective reasons exonerating them, in an order that was internally inconsistent. In the same breath, it sanctions Petitioners for treating Apple's 'hybrid' package as the functional equivalent of a vexatious litigation claim, and then tells Apple that its motion in fact does that work and invites it to "properly initiate the vexatious litigant process" with a supplemented filing. It also directed Apple to increase its fee demand, which the company had voluntarily reduced to approximately ½ million dollars.

The result is that the first developers to bring a class action tying challenge against Apple now face potentially ruinous sanctions and a looming litigation ban—not because their theory has been tested and rejected, but because they advocated for the adjudication of a critically important tying theory, and sought to invoke the very state law petitioning protections this Court has held apply in federal court.

This petition asks this Honorable Court to intervene where only it can: to vacate the ongoing sanctions oppression that rides on an objectively erroneous dismissal; to hold that Petitioners' reliance on California's anti-SLAPP statute, *Lawlor*, and decisions like *Greenflight v. Google* was, at minimum, objectively reasonable; and to make clear that developers who bring serious, DOJ-aligned antitrust claims against Apple will not be destroyed for doing so.

## JURISDICTION

This Court has authority to issue a writ of mandamus to the United States District Court for the Northern District of California under the All Writs Act, 28 U.S.C. § 1651(a), and Fed. R. App. P. 21. In this Circuit, mandamus invocation is guided by the familiar *Bauman* factors. As set out in Part III, those factors are satisfied here, and mandamus is appropriate to correct clear legal errors that cannot be adequately remedied by ordinary appeal.

No separate Rule 58 judgment has yet been entered on the dismissal order, and the sanctions order remains pending with state law claims. The combined effect of those rulings is to impose ongoing sanctions consequences in a posture that does not cleanly fit within 28 U.S.C. § 1291. The petition therefore invokes this Court's mandamus authority "in aid of" its eventual appellate jurisdiction to correct alleged clear errors in the application of *Erie*, the anti-SLAPP statute, and Rule 11 before those errors solidify into an unreviewable template in essential Apple antitrust litigation.

## ISSUES PRESENTED

1. **The *Erie* / Anti-SLAPP Collision.** Did the District Court violate the Rules Enabling Act and *Erie* by refusing to apply California's § 425.16 immunity to a sanctions motion that functioned as a state law vexatious litigation claim, thereby allowing a Federal Rule to abridge a substantive state law right?

2. **Preclusion and the *Rowland* Bar.** Did the District Court clearly err in applying res judicata to bar this action where: (a) the core tying claim was never adjudicated in the prior suit; (b) the new corporate plaintiff (Greenflight) was never a party to the prior suit and could not legally be bound by a *pro se* shareholder's appearance under *Rowland*; and (c) the complaint

alleges years of post-judgment conduct that *Lawlor* defines as new causes of action?

3. **Sanctions and Objective Reasonableness.** Was it a clear abuse of discretion to sanction Petitioners' antitrust theories which mirror the Department of Justice's operative complaint against Apple, rely on intervening Ninth Circuit precedent (*Shields*), and seek to hold Apple to its own prior judicial representations regarding the "null entity" status of the original plaintiff?

4. **Appropriateness of Mandamus.** Is mandamus warranted under *Bauman* where the District Court inverted statutory stays, imposed an immediate prior restraint on filing, and invited ruinous fee awards against a small developer, creating an existential harm that no future appeal can cure?

## STATEMENT OF THE CASE

### I.    THE PARTIES AND THEIR ROLES

This petition arises from *Coronavirus Reporter Corporation, et al.*, No. 3:24-cv-08660-EMC ("CR II"). In that action, three developer entities sue Apple over its control of iPhone software app distribution, asserting federal antitrust and related state law competition claims. The respondent court presided over *Coronavirus Reporter v. Apple Inc.*, No. 3:21-cv-05567-EMC ("CR I").

Coronavirus Reporter Corporation ("CRC") is a Wyoming C corporation that developed the "Coronavirus Reporter" iPhone application. CRC's founder and principal shareholder Dr. Robert Roberts serves as chief medical officer; he is widely credited as the physician-scientist who pioneered lifesaving cardiac injury marker techniques (MBCK, troponin) to detect infarction. Greenflight Venture Corporation, not a participant in CR I, joins this case as a proposed class representative for developers who were subjected to censorship or retaliation by Apple. Greenflight's founder appeared as a *pro se* litigant in CR I to represent his shareholder interests in the company's top-ranked Caller ID app. Gibson Dunn improperly barred him from participating in that legal proceeding after declaring that he was purportedly represented by an attorney, which they recently conceded was untrue. The CR I court declined to adjudicate a sanctions request on the matter, deeming it untimely.

Apple Inc., which designs and manufactures the iPhone and the App Store distribution channel, is the sole defendant in CR II and the real party in interest in this mandamus proceeding. Apple is represented in the district court by attorneys from Gibson, Dunn & Crutcher LLP, who also represented Apple in the earlier CR I litigation.

Although no individual is a named party in CR II, Apple's sanctions seek a nationwide injunction against any persons "associated" with the corporate founders.

## II.    NATURE OF THE DISPUTE AND CLAIMS

Plaintiffs allege that Apple has unlawfully leveraged its control over the iPhone device to monopolize downstream markets for app distribution and code signing ("notary stamps"), and that it has used that control to censor or suppress disfavored apps and retaliate against developers who challenge its conduct.

The First Amended Complaint ("FAC"), a generalized developer class action based on comprehensive post-2021 conduct allegations documented in *DOJ v. Apple*, pleads nine causes of action. Claims 1–4 are DOJ verbatim Sherman Act claims premised on Apple's alleged monopoly power in a foremarket for smartphones or "performance smartphones." Claim 5, Plaintiffs' tying theory, is that the iPhone is the "tying product," while the App Store distribution channel and Apple-controlled iOS "notary stamps" are distinct "tied products."  Claim 6 seeks class redress for an annual $99 developer fee that has issued each year under a dynamic DPLA. Claim 9 invokes California's Unfair Competition Law ("UCL") and the Wyoming Consumer Protection Act ("WCPA"), and covers non-economic injuries from censorship and developer retaliation. This is significant because during the CR I appeal to the Ninth Circuit, Apple took the controversial position that Sherman Act does not cover censorship as an injury.

## III.    PROCEDURAL HISTORY

Judge Chen dismissed the CR I action with prejudice on November 30, 2021, holding that the plaintiffs had not adequately pled a relevant market or antitrust injury. The Ninth Circuit affirmed in November 2023, and the Supreme Court denied certiorari in 2024.

On March 5, 2024, Plaintiffs filed this action in the District of Wyoming, then incorporated the Department of Justice's 2024 Section 2 complaint into the FAC on July 26, 2024. Shortly thereafter, MDL No. 3113 was created to consolidate tag-along class actions focused on "iPhone Purchasers". Plaintiffs petitioned the Judicial Panel on Multidistrict Litigation to consolidate and add a "Developer Track." Thirty "majority" law firms representing iPhone consumers did not object to inclusion of CRC Developer Track into the MDL, and Wyoming District Judge Skavdahl stayed the case pending JPML determination. The JPML denied transfer on October 3, 2024, relying in part on Apple's representation that res judicata applied to this case. Apple then moved to transfer venue to California.

Apple filed its Motion to Dismiss the FAC on March 6, 2025 (ER 324).  Plaintiffs opposed (ER 267), moved to convert into summary judgment under Rule 12(d), citing Apple's disputed factual assertions about corporate identity and privity. (ER 245).

On June 25, 2025, Judge Chen granted Apple's motion to dismiss all claims with prejudice on res judicata grounds (ER 17). While the motion to dismiss briefing was still ongoing, Apple filed a separate "Motion for Sanctions," invoking hybrid authority from Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers. (ER 169). Apple sought monetary sanctions and a broad nationwide pre-filing injunction.

On June 13, 2025, instead of filing a conventional Rule 11 opposition, plaintiffs moved to strike Apple's sanctions motion under California's anti-SLAPP statute, Code of Civil Procedure § 425.16. (ER 130).

On July 8, 2025, Judge Chen issued an order that plaintiffs must obtain leave of court before filing any additional motions. Two days later, on July 10, 2025, the court entered an order to show cause under Rule 11(c)(3), directing plaintiffs explain why their anti-SLAPP motion did not violate Rule 11(b). (ER 16).

The court held "Plaintiffs' claims are barred by res judicata," and included a finding that "Coronavirus Reporter Corporation" was the actual party in *Coronavirus I*, leaving out any analysis of Gibson Dunn's unequivocal statements to the Ninth Circuit that CR I was a "null entity." Judge Chen also found Greenflight Venture Corporation had been adequately represented in CR I by a non-lawyer, deeming it "privity with Dr. Isaacs."

On July 30, 2025, the court granted Apple's motion for sanctions in part, directing Apple to supplement a comprehensive total fee, rather than the $400,000 reduced rate sought in its motion. Apple declined undersigned's written request for the total fee schedule, but upon information and belief, Gibson Dunn billed in excess of $20 million for its CR I & II defense work.

Judge Chen, in addition to ordering Apple to increase their fee ask, also instructed the company to file a vexatious litigant motion to clarify Apple's nationwide injunction demand. Finally, Chen denied Plaintiffs' anti-SLAPP motion on the grounds that § 425.16 ostensibly does not cover Apple's sanctions motion which "lies in federal law."

No evidentiary hearing was held on either Apple's sanctions motion or plaintiffs' anti-SLAPP motion. The July 30, 2025 sanctions order also denied reconsideration papers which cited intervening authorities which undermine the premises of the CR I dismissal —including *Shields v. World Aquatics*, Judge Neal's Rule 12 order in *United States v. Apple*, *Gamboa v. Apple*, Quinn Emmanuel's filing of tying theories based upon CR I in *Proton AG v. Apple*, and the contempt order in *Epic Games v. Apple*. (ER 38)

**REASONS THE WRIT SHOULD ISSUE**

**I.     THE ANTI-SLAPP / ERIE ERROR: PUNISHING PETITIONERS FOR INVOKING THE VERY IMMUNITY THAT SHOULD HAVE STRUCK APPLE'S VEXATIOUS LITIGATION CLAIM**

California's anti-SLAPP statute was enacted to prohibit the use of lawsuits and court procedures as weapons to punish or chill speech and petitioning. It protects people, not particular labels on pleadings. The text is broad. It covers "any written or oral statement or writing made before a . . . judicial proceeding" and "any written or oral statement or writing made in connection with an issue under consideration or review" by a court. Cal. Civ. Proc. Code § 425.16(e)(1)–(2). It then asks a simple, functional question: is there a "cause of action against a person" that "arises from" that person's "act in furtherance" of the right of petition or free speech? § 425.16(b)(1). If the answer is yes, the burden shifts, and unless the claimant can show a "probability of prevailing" on that claim, it must be stricken and the speaker awarded fees. *Baral v. Schnitt*, 1 Cal. 5th 376, 384–95 (2016).

California courts have long recognized that this functional focus means anti-SLAPP reaches claims that seek to impose liability for litigation itself. The California Supreme Court held that § 425.16 protection exists when a cause of action is "based on" protected petitioning, regardless of how the SLAPP labels it. *Navellier*

*v. Sletten*, 29 Cal. 4th 82, 90–92 (2002). The Ninth Circuit's own cases follow the same approach. In *Makaeff v. Trump University, LLC* 715 F.3d 254, 261–63 (9th Cir. 2013) this Court treated a defamation claim based on litigation related speech as a § 425.16 claim because it arose from petitioning conduct in a judicial dispute.

Those protections do not evaporate in federal court or when the underlying claims include federal causes of action. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) and the Rules Enabling Act, federal courts must apply state substantive protections, including immunities, so long as they do not directly collide with the Federal Rules. *Hanna v. Plumer*, 380 U.S. 460, 471–74 (1965) (discussing when a Federal Rule can supersede state law and emphasizing that a rule may not "abridge, enlarge or modify" substantive rights under 28 U.S.C. § 2072(b))

In *U.S. ex rel. Newsham v. Lockheed Martin* 190 F.3d 963, 971–73 (9th Cir. 1999), this Court held that California's anti-SLAPP statute is such a substantive protection and that its special motion burden shifting applies in federal court because it does not "directly collide" with Rules 8, 12, or 56. Later decisions such as *Hilton v. Hallmark Cards* 599 F.3d 894, 901–02 (9th Cir. 2010) and *DC Comics v. Pacific Pictures* 706 F.3d 1009, 1013–14 (9th Cir. 2013) have reiterated that § 425.16 answers a different question than the Federal Rules and therefore must be given effect. *Hilton* cautions that anti-SLAPP cannot be used to strike purely federal causes

of action. It does not permit a court to sidestep anti-SLAPP whenever a party relabels a state law type attack on petitioning as a triple hybrid sanctions motion. Petitioners' "act in furtherance" of their rights of petition and speech has never been in doubt. They filed antitrust complaints in federal court; they asserted a parallel California UCL claim; they petitioned the JPML. All of that is petitioning. The question under § 425.16 is whether Apple's response—vaguely defined hybrid sanctions—constitutes a "cause of action" that arises from that petitioning. On its face, it does.

Apple's sanctions motion is not a narrow request that the court reprimand a single defective brief. It is a sprawling attack on Petitioners' entire antitrust campaign. It catalogues, with more than 200 citations, the filing of CR I, the filing of this case, even a perfectly reasonable *certiorari* petition, and characterizes that entire history as a "campaign of harassing litigation" that must be deterred. It then seeks heavy relief: hundreds of thousands of dollars in fees (with the clear signal that a much larger amount will be sought later), revocation of counsel's admission, and a nationwide injunction. Functionally, that is a vexatious litigation and suit in all but name. It is a "lawsuit within a lawsuit" complaining that Petitioners have used the courts and the public square to challenge Apple.

Petitioners Emergency Stay invoked § 425.16(g)'s automatic stay and asked the court at least to stay sanctions proceedings while the anti-SLAPP motion and a

pending Rule 12(d) conversion request were decided and while limited discovery could be taken on contested facts such as corporate identity and Apple's shifting "null entity" story. That is exactly how the statute is supposed to work.

The district court never engaged that functional analysis. It did not ask what "cause of action" Apple was asserting or whether that cause of action arose from Petitioners' petitioning. It did not ask whether there was any direct collision between § 425.16 and Rule 11. It did not ever implement the stay. Instead, it delivered a curt denial attesting "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims" and "Defendant's bases to seek sanctions lie in federal law (Rule 11, a federal court's inherent authority, and 28 U.S.C. § 1927)."

That paragraph embodies the *Erie* error. It treats the caption on Apple's filing ("Rule 11") as dispositive and ignores the substance. It assumes that because Apple cites federal procedural "bases," its sanctions package is wholly outside state law characterization, even though the package itself seeks the kind of relief and rests on the kind of allegations that California has always treated as classic anti-SLAPP "claims." It conflates Hilton's caution about striking federal causes of action with a blanket exemption for any pleading that invokes a Federal Rule, and it never performs the two-step Newsham analysis. Section 425.16 creates a state immunity for protected petitioning. Rule 11 is a federal mechanism for deterring objectively

unreasonable filings. They answer different questions. There is no "direct collision" between saying that a plaintiff cannot be saddled with retaliation for petitioning, and saying that truly baseless filings may be sanctioned under Rule 11. To treat Rule 11 as wiping out § 425.16 whenever a defendant chooses to package its vexatious litigation theory as a "sanctions motion" is to allow a Federal Rule to abolish a state law immunity—a result the Rules Enabling Act squarely forbids.

The sequencing makes the problem worse. When Petitioners invoked the stay and asked the court not to force them to brief, argue, and endure fee quantification on Apple's sanctions "claim" before the court had decided whether it could go forward at all, the court did the opposite. After granting Apple's motion to dismiss on sweeping res judicata grounds that were themselves contested, it issued a Rule 11(c)(3) Order to Show Cause targeting Petitioners' own anti-SLAPP motion and cross-sanctions motion, and gave them four business days and ten pages to defend not only their five-year litigation history but their attempt to invoke § 425.16.

The court thus used Petitioners' attempt to invoke anti-SLAPP immunity, and their attempt to obtain the stay § 425.16(g) contemplates, as part of the evidence of a "campaign of harassing litigation," while refusing to apply the immunity at all. This is simply not what the California legislators had in mind when they drafted § 425.16.

At the same time, the court recognized that Apple's sanctions package was, in substance, a vexatious litigation claim. In the portion of the order addressing Apple's request for a nationwide injunction, the court acknowledged that such relief requires a separate motion, and specific findings under *De Long*, and it invited Apple to "properly initiate the vexatious litigant process". That invitation concedes that the existing sanctions motion already does the work of a vex-lit complaint. Yet having effectively recognized Apple's motion as a vex-lit "cause of action," the court refused to treat it as such for purposes of § 425.16, solely because Apple had uttered the words "Rule 11" and "§ 1927." The result is that Apple received the practical benefits of having filed a vex-lit suit—stigma, fee-shifting, and the looming threat of a nationwide filing ban—without being subjected to the anti-SLAPP protections California requires for such claims.

Even if one accepted, *arguendo*, the district court's formal premise that Apple's "bases" for sanctions are federal—Rule 11, inherent power, § 1927—that does not end the *Erie* Doctrine inquiry, because those federal tools are being used to punish the exercise of a state substantive right. That is the collision the order never acknowledges. Put differently, there are two "*Erie* problems" layered on top of each other. At the *conduct* level, § 425.16 protects Plaintiffs' act of petitioning (filing complaints, JPML petitions, appeals, and public statements) regardless of whether the underlying claims are federal or state. At the *substantive right* level, the UCL

itself is a state cause of action, and California has made the policy choice to cloak that cause of action in anti-SLAPP immunity against retaliatory liability. Apple's hybrid sanctions motion, however it is captioned, seeks to destroy that state law cause of action and punish its exercise. When the district court says "the bases to seek sanctions lie in federal law" and treats that as the end of the matter, it effectively allows Rule 11 and "inherent power" to erase the UCL's associated immunity. That is precisely what the Rules Enabling Act forbids: using a Federal Rule to "abridge, enlarge, or modify" a substantive right created by state law.

A UCL claim is not just another count on a caption; it is a state created right. California has chosen to make it straightforward for private parties to challenge "unfair" business practices and, critically, has chosen to wrap that right in petitioning protections, anti-SLAPP being one of them. When Plaintiffs filed and litigated a UCL claim, they were exercising a state law cause of action that carries with it a state law immunity against retaliatory liability for the act of petitioning. Under *Newsham*, § 425.16 is part of the substantive bundle that travels with that claim into federal court. The fact that Apple reaches for federal sanctions mechanisms to retaliate does not convert the entire dispute into a "purely federal" one; Chen is mistaken. It simply means Apple is using federal procedure as the vehicle to attack a state law right.

Hence, the District Court allowed Apple to improperly use Rule 11 and inherent power as the vehicle to impose state law consequences for having asserted a state law cause of action that California's own legislature and courts have singled out as protected petitioning. In state court, a developer who filed the same UCL claim and then faced a vex-lit cross-complaint would be entitled to invoke § 425.16 and, if successful, would have that retaliatory claim stricken and recover fees. Under the district court's logic, that same developer loses those protections the moment Apple repackages its cross-complaint as a "Rule 11 motion."

That is exactly the kind of outcome determinative divergence *Erie* forbids. The substantive right at issue is not the right to file a Rule 11 motion; it is the right to pursue a state law UCL claim without being punished by a retaliatory, state law vex-lit theory unless the opponent can satisfy § 425.16's burden. When a federal court allows Rule 11 to be used in a way that a California court could not, because § 425.16 would block the sanctions/vex-lit theory in state court, there is a direct collision with state immunity, not with the Federal Rule. The Rules Enabling Act does not permit that result.

The practical effect on Petitioners evidences why this is not a technicality. For six months and counting, Petitioners have been left in a limbo that anti-SLAPP was designed to prevent. They stand branded as having engaged in sanctionable litigation conduct. They face an open ended threat of a harsh fee award and a future nationwide

injunction. They are barred by court order from filing further motions without leave, while Apple has been explicitly invited to file a fuller vex-lit motion against them. Their reputations have been damaged and their already fragile finances further strained, all because they did what § 425.16 tells California litigants to do: file a special motion when a powerful opponent turns the courts into a weapon against petitioning. For a distinguished physician whose invention transformed millions of lives, a small developer already pushed toward insolvency, and a small town New England lawyer, being forced to endure months or years under that cloud, waiting to see when Apple will file its "perfected" vex-lit motion and how large a fee request it will submit, is itself a serious harm. Undersigned filed an affidavit that the steep monetary fees impose hardship; the District Court improperly overlooked this declaration. Anti-SLAPP was supposed to strike such burdensome claims early; here, invoking it only deepened the punishment.

That is an *Erie* violation in the deep sense, not a mere misreading of *Hilton*, and it is why mandamus is needed now rather than after Apple has had years to leverage that error into permanent hardship and stigma, which constitutes practical defeat. This presents a genuinely first impression question for this circuit. The Court has never addressed whether a defendant may use a hybrid package of federal procedural vehicles to punish petitioning, and in particular to punish the subset of that petitioning that consists of state law claims and filings (here, a California UCL claim

and the attempt to invoke California's own protections). If that maneuver is blessed, § 425.16 is effectively nullified in federal court: any vexatious litigation, abuse of process, or fee shift theory that would be subject to anti-SLAPP scrutiny in state court can be repackaged as a "sanctions motion" invoking these three federal tools and thereby escape the state immunity entirely. That risk is not hypothetical; Apple's motion is a template for turning *Newsham* on its head and rendering anti-SLAPP protections illusory whenever a case lands in federal court.

## II. THE SANCTIONS ORDER RESTS ON A CASCADE OF CLEAR ERRORS IN RES JUDICATA

### A. *Shields* and the Evolution of Platform Antitrust Law Made Refiling Objectively Reasonable

No fair reading of the record can support the conclusion that filing CR II was "objectively unreasonable" once the doctrinal and factual landscape changed. In the interim since the CR I court found the complaint deficient in its definition of a relevant market, the law and the enforcement environment moved in Petitioners' direction. In *Shields v. World Aquatics*, No. 23-15092 (9th Cir. Sept. 17, 2024) this Court clarified that antitrust plaintiffs in platform cases may proceed on direct evidence of anticompetitive effects, without first prevailing on rigid, ex ante market definitions, where they plausibly allege reduced output, degraded quality, or

exclusionary design. Other Apple developers, including in what Apple calls "identical case" PhantomALERT, have invoked *Shields* to support such tying theories. In *Gamboa v. Apple*, a court in the same district took seriously a "technical tying" claim based on Apple's design of iCloud Photos and its control over default settings and interoperability, recognizing that Apple's design choices can themselves constitute exclusionary conduct. And significantly, in 2024 the United States filed a monopolization action against Apple and survived Rule 12 on a complaint that rests on the same foremarket/aftermarket gatekeeping structure that CR I alleged at the outset: Apple's use of its device position and OS control to lock developers and users into its proprietary distribution and enforcement channels.

CR II responded to these developments in the only responsible way: it refined the tying allegations, opposed dismissal based upon *Shields* and DOJ's operative complaint, and pleaded a more detailed tying claim under Sections 1 & 2 of Sherman. That is not a prohibited "do-over"; it is precisely how complex antitrust litigation evolves over time. What's more, Neither the district court nor this Court adjudicated the tying theory (see below), so it defies logic to assert that claim preclusion could exist, let alone, was sanctionable to *try* to persist on a landmark tying theory.

**B.      Greenflight Is a New Plaintiff That Was Never, and Could Never Have Been, Bound by CR I**

The District Court's decision to sanction Petitioners for asserting Greenflight's claims rests on a legal impossibility. It presumes that a distinct corporation can be bound by a prior judgment in which it was never named, never served, and never appeared with licensed counsel, solely because its shareholder filed that prior action *pro se*. This violates the bedrock principle that nonparty preclusion is "the exception, not the rule," and that "virtual representation" is a disapproved doctrine. *Taylor v. Sturgell,* 553 U.S. 880, 891–93 (2008).

Greenflight Venture Corporation is a distinct corporation with its own assets, patents, contracts, and independent legal existence. Structurally, it was impossible for Greenflight to have 'had its day in court' in CR I because it had no counsel. Under this Circuit's *United States v. High Country Broad. Co.,* 3 F.3d 1244, 1245 (9th Cir. 1993) precedent, a corporation cannot appear in federal court without an attorney. *Rowland v. California Men's Colony*, 506 U.S. 194, 202 (1993). A corporate claim filed by a *pro se* individual is legally a nullity; it cannot be adjudicated on the merits, and therefore cannot trigger claim preclusion against the corporation in a future suit. It is nonsensical to sanction Plaintiffs for *believing* Greenflight couldn't be represented by a non-lawyer. But that is precisely what Judge Chen's order does.

Apple's own strategic maneuvering confirms this structural defect. In 2021, Gibson Dunn's Rachel Brass send a formal notification letter declaring Dr. Isaacs's *pro se* appearance would not be recognized by the firm, citing the very rule that corporations must have counsel. Having successfully used corporate separateness as a shield to shut Dr. Isaacs out of court in 2021, Apple now wields it as a sword to bind Greenflight to that same proceeding. Apple cannot have it both ways: it cannot argue that the 2021 plaintiff was a corporation to mandate counsel, and then argue that the unrepresented *pro se* proceedings *of a shareholder* somehow fully adjudicated and extinguished that corporation's antitrust rights.

The parallel *Greenflight v. Google* litigation in the Southern District of Florida illustrates the correct structural application of these rules. There, faced with similar facts, Google argued and the court accepted that Dr. Isaacs lacked standing to sue on behalf of Greenflight's corporate interests and patent, and that the entities had to be severed because Isaacs could not represent the corporation *pro se*. That court properly recognized what the District Court here ignored: under *Rowland*, Isaacs and Greenflight are legally distinct actors. Judge Chen sanctioned Petitioners for merely *accepting* what the Florida District Court ordered. That is improper under the principles of comity and deference to competent authorities.

The privity holding that undergirds both dismissal and sanctions is not a close call within a gray zone; it is flatly inconsistent with *Taylor*. Under *Taylor*, non-party

preclusion is "the exception, not the rule" and is limited to narrow categories: consent, substantive legal relationships (trustee/beneficiary, assignee/assignor), certified class representation, actual control of the prior litigation, designated proxies, or specific statutory schemes. Mere common ownership or alignment of interests is explicitly insufficient. None of those *Taylor* categories fit Greenflight. The dismissal order nonetheless found privity in a single paragraph, leaning on a stray description of Greenflight as Isaacs's "solely owned entity", with no evidentiary hearing on ownership, control, or assignment of rights. That is exactly what *Taylor* forbids: using a thin, ownership based inference as a shortcut to bind a nonparty corporation in a high stakes antitrust case, while ignoring the absence of counsel, the lack of any recognized preclusion category, and the contrary treatment of the same actors in a parallel federal proceeding.

To sanction Petitioners for this is to punish them for adhering to the rules of corporate separateness and standing. It effectively rules that a *pro se* plaintiff is legally incompetent to sue for a corporation, yet simultaneously competent enough to waive that corporation's future rights forever. That is not the law; it is a procedural trap designed to immunize a monopolist.

**C.** *Lawlor* **New Conduct Doctrine Overwhelmingly Supports CR II and Was Brushed Aside**

Even if one assumed, wrongly, that CR I fully adjudicated every aspect of Petitioners' pre-2021 grievances, that does not come close to justifying preclusion of what CR II actually pleads. The FAC is saturated with post judgment conduct meticulously researched by the DOJ, as well as specific new instances identified by Plaintiffs: Apple's annually updated DPLA terms; new link taxes and Core Technology Fees; retaliatory moves against developers in the wake of *Epic* and foreign regulatory pressure; and subsequent censorship and ranking suppression that occurred years after CR I was dismissed. Those are not "repackaged old facts." They are new acts and new injuries in the most literal *Lawlor* sense. The respondent court analysis fully and completely ignored any attention to *Lawlor* or to Plaintiffs' repeated pleas to acknowledge the new conduct.

*Lawlor* held that "[a] prior judgment is res judicata only as to suits on the same cause of action," and that even between the same parties "a prior judgment cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322 (1955). That is exactly the situation here. Petitioners could not have challenged a 2023 Core Technology Fee, a 2024

retaliation, or a European DMA "compliance" maneuver in a 2020 complaint. By definition, those claims "did not then exist."

Petitioners candidly asked the court to separate genuinely "repeat" allegations, which arguably could be subject to preclusion depending upon the 'null entity' determination, from the swath of new conduct that could not be. The dismissal and sanctions orders never do that work. They instead treat the mere presence of the word "Coronavirus Reporter" as if that were the end of the analysis.

Rule 11 does not authorize a court to punish a plaintiff for invoking *Lawlor* in exactly the circumstance the Supreme Court had in mind: repeated abuse by a dominant defendant continuing its course of conduct over time and daring anyone to sue twice. If anything, pressing *Lawlor* here is a sign that Petitioners understood preclusion doctrine and tried to live within its bounds.

**D.** **Apple's "Null Entity" Debacle Sanctions Petitioners for Relying upon Respondent's Own Judicial Representations**

The "null entity" issue is yet more clear evidence of the structural error infecting these sanctions. Apple has successfully told two different mutually incompatible stories about the plaintiff's existence, and Petitioners were sanctioned merely for asking the District Court to resolve the contradiction.

In 2022, on appeal and to avoid a remand for damages, Apple explicitly represented to the Ninth Circuit that there was "no actual 'Coronavirus Reporter' entity"—that the plaintiff was a nullity. Attorney Mathews immediately emailed Gibson Dunn's Rachel Brass for clarification, and she unambiguously doubled-down that the CR I complaint caption listed an app name, not a proper corporation name, and therefore no damages could be awarded even if CR I prevailed in its appeal. When Petitioners filed *CR II*, they simply took Apple at its word: if the plaintiff in the first case was a legal nullity, as Apple assured the Ninth Circuit, then that proceeding could not carry res judicata effect against a properly named corporate plaintiff in the second.

Rather than addressing this judicial estoppel problem, the District Court adopted Apple's current convenience—that the corporation has "always" existed—and branded Petitioners' reliance on Apple's prior appellate briefing as "preposterous." This turns the integrity of the judicial process on its head. A defendant cannot tell the Court of Appeals "this plaintiff does not exist" to secure a dismissal, and then tell the District Court "this plaintiff was fully present" to secure sanctions. There is nothing objectively unreasonable about seeking to hold a litigant to its prior judicial representations. To the contrary, punishing Petitioners for identifying this existential contradiction violates the basic requirements of Due Process.

**E.     The Tying Claim Was Ignored, Not Adjudicated; Reasserting a Core Theory Left in Judicial Limbo Is Not Harassment**

Perhaps the most glaring error in the orders below is the refusal to confront a simple, dispositive fact: no court has ever adjudicated the *per se* tying claim advanced in CR I and CR II.

In *CR I*, the parties presented a distinct, *per se* tying theory under *Northern Pacific* and *Jefferson Parish*: that Apple uses its hardware monopoly to force the use of its App Store and notarization aftermarkets. This was not a throwaway line; it was a central pillar of the case and the explicit basis for a preliminary injunction motion "likelihood to prevail" section, which was petitioned all the way to the Supreme Court. Oddly, no acknowledgement of tying ever occurred despite over five years of advocacy. The District Court and the Ninth Circuit dismissed *CR I* entirely on threshold market definition grounds without ever acknowledging, analyzing, or ruling upon the tying cause of action. The claim was effectively invisible to the courts.

Petitioners filed *CR II* not to "redo" a failed theory, but to obtain the adjudication of theories never settled in *CR I,* and to redress new conduct. Res judicata bars relitigating claims that were decided; when a court dismisses a complex antitrust case by resolving only one theory and silently passing over another, a new

plaintiff like Greenflight (or ProtonMail, or PhantomAlert) is not "harassing" the defendant by seeking to ensure the second theory is heard.

To sanction this conduct is to improperly grant courts the power to extinguish federal rights through silence. Under the District Court's logic, if a judge ignores a plaintiff's primary argument, reasonable efforts to persevere and adjudicate the undecided claim constitute vexatious conduct. That is not only a denial of Due Process, by definition, it is unethical and contrary to fundamental principles of justice. Petitioners are entitled to a ruling on whether Apple's technical and contractual tying is illegal. They have never gotten one. Punishing them for refusing to accept judicial silence as a final judgment is a structural error that only Mandamus can cure.

**F.      *Roundtree* and *Estate of Blue* Are Inapposite; Using Them to Sanction *Lawlor* Mandated Claims Is Legal Error**

The Sanctions Order attempts to anchor its finding of "harassment" in *Roundtree* and *Estate of Blue*. This reliance betrays a fundamental category error. Those decisions penalized a litigant who repeatedly files the exact same complaint, a photocopied facsimile in essence, against the exact same defendant after a final, dispositive adjudication. They rightfully seek to pre-empt such behavior.

*CR II* is the opposite of a photocopy of CR I. Unlike the plaintiffs in *Roundtree*, Petitioners did not simply refile a defeated pleading. They comprise a new corporate plaintiff, Greenflight, and they pleaded years of post-judgment conduct that *Lawlor* commands must be treated as fresh causes of action. They advanced a *per se* tying theory that no court has ever adjudicated. And even if CRC's tying theory might be considered derived material from 2020, CRC reasonably sought court declaration as to the null entity issue Apple invented.

To cite *Roundtree* in this context is to equate the necessary evolution of complex antitrust litigation with the mindless repetition of a frivolous claim. *Pepper* is in its thirteenth year of Apple antitrust proceedings; *Epic* is in its sixth year. In these cases and nearly every other related Sherman case, Apple routinely files frivolous Rule 60 motions and appeals which do not succeed. There can be little doubt Apple has secured a twenty-year monopoly by betting on a war of attrition. When Petitioners dared to fight back – turning their very own null entity and *pro se* corporation representation arguments against them – they resorted to their last remaining weapon: a sanctions gamble that the complexity of the matter would allow it to be swept under the rug, at the expense of the Petitioners.

### G. The Motions Swept into the OSC Were Necessary Procedural Countermeasures

The District Court's finding relies on a category error: it mistakes the vigorous defense of a case for the vexatious multiplication of it. The Rule 11 Order to Show Cause and the subsequent Sanctions Order lumped together a cluster of distinct filings (the anti-SLAPP motion, the emergency stay, and the cross-sanctions motion) and treated them as a monolithic campaign of bad faith. This ignores the procedural reality that Apple's own aggressive posture made these filings necessary.

Each motion was a specific, reasonable reaction to a stimulus Apple created. The Anti-SLAPP Motion was filed because Apple sought substantive damages and a nationwide injunction based on protected petitioning. This is the statutorily prescribed mechanism for asserting immunity. Similarly, the Amended Emergency Stay was filed because § 425.16(g) *mandates* a stay of proceedings upon the filing of an anti-SLAPP motion, which the District Judge had ignored.

To brand these purely defensive filings as harassing is to weaponize Rule 11 against Due Process itself. The District Court sanctioned Petitioners for fighting back with the very tools—stays, immunities, and objections—that the Federal Rules and California law provide to the underdog. That is not deterring abuse; it is punishing participation.

### III. MANDAMUS IS WARRANTED UNDER *BAUMAN* BECAUSE THE DISTRICT COURT'S STRUCTURAL ERRORS IMPOSE EXISTENTIAL HARM THAT NO LATER APPEAL CAN CURE

Mandamus is reserved for "extraordinary causes," and the *Bauman* factors exist precisely to identify cases where a district court's error is so structural that ordinary appeal is a hollow promise. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004). This is such a case.

**First & Second Factors: Lack of Adequate Remedy and Irreparable Harm.** The ordinary appeal route is not a remedy here; it is a forfeiture. There is no separate Rule 58 judgment on the dismissal order, yet the sanctions order fixes liability without setting an amount. Petitioners thus face the worst of both worlds: a "final" res judicata determination used to brand their case as a forbidden rerun, and an open-ended sanctions liability. For Petitioners, including an 85-year-old physician who pioneered lifesaving technology and a small developer driven to the brink of insolvency, this posture is a severe sentence dressed up as fee shifting. The court has expressly invited Apple to perfect a 'narrowly tailored' nationwide injunction barring future access to the courts. This operates as an immediate prior restraint on First Amendment petitioning. To tell these Petitioners they must endure years of fee quantification and appellate delay while under a pre-filing gag order is

to deny them a day in court entirely. The harm—financial, reputational, and constitutional—is immediate and cannot be unwound by a reversal years from now.

**Third factor: Clear Legal Error.** Sections I and II set out the legal errors in detail: the refusal to apply California's anti-SLAPP immunity to a sanctions motion that is, in substance, a vexatious litigation claim against petitioning; the treatment of a new corporate plaintiff as if it had been represented by a pro se individual in CR I, in defiance of *Taylor & Rowland*; the disregard of *Lawlor*'s; and the use of a contested, fact bound preclusion dispute as the premise for declaring CR II "objectively baseless." These are not close discretionary calls. They are misapplications of black letter law.

**Fourth factor: Persistent Disregard of Governing Rules.** The errors here are not isolated. They fit a pattern in which difficult antitrust and UCL theories about dominant platforms are diverted from merits adjudication into procedural cul-de-sacs: CR I ended at Rule 12 without ever reaching tying; Greenflight's Google case severance undercuts Chen's privity theory; DOJ's Apple case, *Gamboa*, *Proton*, and *PhantomAlert*, are moving forward on materially similar theories in other courts. Against that backdrop, the use of sanctions to shut down the one case that dared to press a structural tying theory earliest sends exactly the wrong institutional message. If left standing, the order below becomes a template: a dominant platform can defeat a first complaint on technical grounds, then invoke that defeat to brand any later DOJ

aligned case as "harassing," seek sanctions under a hybrid Rule 11/§ 1927/inherent-power motion, and avoid both anti-SLAPP screening and merits review. That is precisely the kind of "persistent disregard of federal rules" and "new and important problem" *Bauman* contemplates.

**Fifth Factor: New and Important Problems.** This petition presents a first-impression question of exceptional importance: whether a defendant may use a hybrid federal sanctions motion to punish petitioning and thereby evade the substantive immunity *Newsham* guarantees. If allowed to stand, the order below creates a roadmap for evasion for every dominant firm.

## CONCLUSION

For the foregoing reasons, the petition for a writ of mandamus should be granted, the district court's June 25 and July 30, 2025 orders should be vacated, and the case remanded for further proceedings consistent with this Court's opinion.

Dated: December 10, 2025   AMERICAN WEALTH PROTECTION

/s/ Keith Mathews
KEITH MATHEWS
1000 Elm Street #800
Manchester, NH 03101
(603) 622-8100
*Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limit of Fed. R. App. P. 21(d)(1) because excluding the parts of the petition exempted by Fed. R. App. P. 32(f), it contains 7,750 words.

2. This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: December 10, 2025    AMERICAN WEALTH PROTECTION

/s/ Keith Mathews
KEITH MATHEWS
1000 Elm Street #800
Manchester, NH 03101
(603) 622-8100
*Attorneys for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, I electronically filed the foregoing Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system. I further certify

that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 10, 2025        AMERICAN WEALTH PROTECTION

/s/ Keith Mathews
KEITH MATHEWS
1000 Elm Street #800
Manchester, NH 03101
(603) 622-8100
*Attorneys for Petitioners*