No. 25 - 7761

# In the United States Court of Appeals for the Ninth Circuit

In re CORONAVIRUS REPORTER CORPORATION, CALID INC., and GREENFLIGHT VENTURE CORPORATION,

*Petitioners,*

*v.*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA,

*Respondent,*

*and*

APPLE INC.

*Real Party in Interest.*

On Petition for a Writ of Mandamus to the United States District Court for the Northern District of California
No. 3:24-cv-08660 (Chen, J)

**PETITION FOR REHEARING EN BANC**

KEITH MATHEWS
AMERICAN WEALTH PROTECTION
1000 Elm Street #800
Manchester, NH 03101
(603) 622-8100
*Attorneys for Petitioners*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES................................................................................ iii

I.     STATEMENT UNDER FED. R. APP. P. 35(b)........................................... 1

I.     ORDER TO BE REHEARD .................................................................. 4

II.    ISSUES PRESENTED........................................................................ 4

III.   STATEMENT OF THE CASE: A CHRONICLE OF UNFAIRNESS ......... 5

IV.   ARGUMENT ..................................................................................... 7

       A. Intervening DOJ "Comply with Care" Initiative Confirms the Exceptional Importance of This Matter ............................................. 11

       *Alternative relief in aid of jurisdiction.*................................................. 14

V.    CONCLUSION ................................................................................. 16

CERTIFICATE OF COMPLIANCE ..................................................................... 17

CERTIFICATE OF SERVICE............................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Bauman v. U.S. Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977)........................................... 7

*Standard Oil Co. v. United States*, 221 U.S. 1 (1911)............................................. 3

**Statutes**

28 U.S.C. § 1651(a)...................................................................................... 14

**Other Authorities**

Gail Slater, Assistant Att'y Gen., Antitrust Div., U.S. Dep't of Just., *Remarks at The Ohio State University Law School* (Aug. 29, 2025)............................... 11

H.R. Comm. on the Judiciary, Subcomm. on Antitrust, Com. & Admin. L., Investigation of Competition in Digital Markets 11 (2020) (Majority Staff Report)...................................................................................................... 3

Kelly Garcia & James Harris Weingarten, *How to Comply with Care*, Antitrust L. Section (Am. Bar Ass'n) (Dec. 10, 2025)...................................................... 12

## I.    STATEMENT UNDER FED. R. APP. P. 35(b)

Rehearing en banc is warranted because this proceeding (1) presents a question of exceptional importance, and (2) en banc consideration is necessary to secure uniformity of this Court's decisions.

We are living through a rapid transformation in how society functions. AI systems and platform ecosystems are becoming the default pathways for communication, commerce, and civic life. In that environment, challenges to dominant gatekeepers are not academic. They are the means by which law retains order in an evolving world. This case therefore presents an institutional question: will antitrust challenges to dominant platforms be adjudicated, or will they be reserved only for the elite firms themselves to litigate? That question is especially urgent now, as AI accelerates the centralization of control over distribution, ranking, identity, payments, and access by a small set of gatekeepers.

Petitioners brought such a challenge, and the response was not a merits adjudication. The response was a sanctions structure that, in practical effect, punishes the act of bringing the challenge and impedes the ability to continue any true semblance of advocacy. Filing restraints are on the table. Sanctions liability is imposed now, while the amount is pushed into the future. A broader nationwide injunction is invited. The message is unmistakable: stop petitioning, or face significant hardship. Petitioners are among the rare 'citizen' litigants who have

pressed these issues despite overwhelming pressure to stop. They were met with an unorthodox sanctions posture that operates immediately before any meaningful appellate review is realistically available. In this context, "appeal later" is not an adequate remedy; it is the mechanism by which undue pressure becomes outcome determinative.

Challengers to the dominant platforms at this level are rare; indeed, Gibson Dunn won Competition Group of the Year for defeating this case. Gibson Dunn described one member of the plaintiff team as a "sophisticated litigant." Other more resourced actors (i.e. Epic and their attorneys at Quinn Emanuel) have admittedly struggled to effect meaningful change or regulation.  Petitioners had vastly fewer resources and proceeded on the premise that courts would protect their voice. That did not happen here. Instead, Petitioners were met with punishment and restraints. The question for this Court is not rhetorical: is this the tone the judiciary sets as we enter the AI era— that the most consequential independent challenges to gatekeeper power will be met not with adjudication, but with sanctions that operate as a form of "tar and feathering"? That cannot be allowed to become the status quo.

This is precisely the scenario in which mandamus exists. Yet the panel denied relief in a single paragraph, citing *Bauman* without applying it, offering no factor analysis and no guidance. That summary denial is not neutral. In a sanctions posture designed to operate immediately and be reviewed later, it functions as a pocket veto

of *Bauman*, one that risks becoming a roadmap for procedural suppression in the very cases where scrutiny is most urgent. The panel's disposition invites a dangerous inference: that even immediate, coercive restraints of this kind can never satisfy *Bauman* as a matter of law. If that inference stands, the practical effect will be a sanctions loophole that suppresses scrutiny when scrutiny is most necessary.

The Sherman Act was enacted to prevent private trusts from becoming so dominant and so embedded in the nation's economic and civic life that law becomes ineffective in practice. Senator Sherman's warning is not a technicality; it is a constitutional insight: monopolies are "inconsistent with our form of government," and "if we will not endure a king as a political power, we should not endure a king over the production, transportation, and sale of any of the necessaries of life." See, e.g., *Standard Oil Co. v. United States*, 221 U.S. 1 (1911) (structural remedial premise); John Sherman, remarks supporting the Sherman Act (1890) (quoted in DOJ historical materials).

That foundational concern is magnified in the platform economy. A bipartisan congressional investigation described dominant digital platforms as becoming "interwoven into the fabric of our economy and our lives," and emphasized that "once a firm captures a network it can become extremely difficult to dislodge or replace." H.R. Comm. on the Judiciary, Subcomm. on Antitrust, Com. & Admin. L., Investigation of Competition in Digital Markets 11 (2020) (Majority Staff Report).

## I. ORDER TO BE REHEARD

Petitioners seek rehearing of the Court's January 28, 2026 order denying mandamus:

> "Petitioners have not demonstrated a clear and indisputable right to the extraordinary remedy of mandamus. See *In re Mersho*, 6 F.4th 891, 897 (9th Cir. 2021) ("To determine whether a writ of mandamus should be granted, we weigh the five factors outlined in *Bauman v. United States District Court*."); *Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977). The petition is denied."

## II. ISSUES PRESENTED

1. **The *Erie* / Anti-SLAPP Collision.** Did the District Court violate the Rules Enabling Act and *Erie* by refusing to apply California's § 425.16 immunity to a sanctions motion that functioned as a state law vexatious litigation claim, thereby allowing a Federal Rule to abridge a substantive state law right?

2. **Preclusion and the *Rowland* Bar.** Did the District Court clearly err in applying res judicata to bar this action where: (a) the core tying claim was never adjudicated in the prior suit; (b) the new corporate plaintiff (Greenflight) was never a party to the prior suit and could not legally be bound by a *pro se* shareholder's appearance under *Rowland*; and (c) the complaint alleges years of post-judgment conduct that *Lawlor* defines as new causes of action?

3. **Sanctions and Objective Reasonableness.** Was it a clear abuse of discretion to sanction Petitioners' antitrust theories which mirror the Department of Justice's operative complaint against Apple, rely on intervening Ninth Circuit precedent (*Shields*), and seek to hold Apple to its own prior judicial representations regarding the "null entity" status of the original plaintiff?

4. **Appropriateness of Mandamus.** Is mandamus warranted under *Bauman* where the District Court inverted statutory stays, imposed an immediate prior restraint on filing, and invited ruinous fee awards against a small developer, creating an existential harm that no future appeal can cure?

### III. STATEMENT OF THE CASE: A CHRONICLE OF UNFAIRNESS

The procedural history of this case reflects five years of Big Law and Big Tech gamesmanship designed to discredit Petitioners before they ever reach the merits on their straightforward and efficient Sherman tying claim. On June 25, 2025, the District Court dismissed all claims with prejudice on *res judicata* grounds, despite the fact the 2020 CR I litigation never adjudicated the critical tying theory at issue. Moreover, unresolved contradictions regarding corporate identity and Apple's own judicial representations were never meaningfully addressed.

While dismissal briefing was underway, Apple launched a "hybrid" sanctions maneuver seeking potentially ruinous fees and a permanent, nationwide gag order. When Petitioners sought the protection of California's anti-SLAPP statute—the specific remedy for such retaliatory attacks—the Court sanctioned them for invoking the law meant to protect vulnerable petitioners. On July 8, 2025, the Court stripped Petitioners of their right to file motions without special permission, an immediate restraint on their ability to defend themselves.

By July 30, 2025, the Court granted sanctions in part and directed Apple to increase its fee demand, explicitly inviting them to initiate a vexatious litigant process. Petitioners now stand in an indefinite state of limbo where sanctions liability is determined but the exact amount remains an open ended threat, making the ordinary appeal route impractical by way of unnecessary hardship and a protracted denial of Petitioners' existential rights.

This petition arises from a procedural posture that is unusual—and coercive in practice. The district court imposed immediate filing restraints and deferred (i.e. staged) sanctions—liability now, amount after any appeal or any certiorari petition. Therefore meaningful appellate review is realistically unavailable for years, and hardship becomes irreparable. While the sanctions dispute was pending, the district court imposed a leave requirement restricting Petitioners' ability to file additional

motions. The court also issued a *sua sponte* Order to Show Cause under Rule 11(c)(3) directed at Petitioners' anti-SLAPP motion itself.

Mandamus was sought because "appeal later" becomes the mechanism of coercion in a deferred/staged sanctions posture. Petitioners' central point was that this structure exerts present coercion against continued petitioning—precisely the scenario mandamus exists to address. See *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650 (9th Cir. 1977).

The panel denied mandamus in one paragraph without applying Bauman to these facts. On January 28, 2026, the panel denied mandamus in a single paragraph citing *In re Mersho* and *Bauman* without factor application. Petitioners seek rehearing and rehearing en banc because, in this posture, a summary denial functions as a de facto authorization of this untenable mechanism.

## IV.   ARGUMENT

The District Court's ruling rests on a legal impossibility. In this Circuit, a corporation cannot appear in federal court without an attorney. Binding Greenflight to a prior case where its shareholder appeared *pro se*—and was barred from representing the company—violates the bedrock of corporate separateness. To bind a corporation to a judgment in a case it was legally incapable of participating in violates the 'day in court' requirement of *Taylor v. Sturgell* and ignores the strict

limits on nonparty preclusion. The efforts to block that shareholder from participating in the legal process in fact serves as evidence (see infra) that Apple engaged in the exact litigation conduct currently under scrutiny by the DOJ Task Force.

Apple cannot play "fast and loose" with the truth. In 2022, Apple told this Court there was "no actual Coronavirus Reporter entity" to avoid paying damages. They cannot now claim that same entity was fully present for the purpose of barring this new case. Sanctioning Petitioners for pointing out this contradiction is a denial of Due Process. The integrity of the judicial process is undermined by Apple's strategic contradictions regarding entity status—conduct that amounts to a fraudulent manipulation of the record. Apple plainly represented to this Court that Coronavirus Reporter was a "nullity" to avoid a remand for damages. In 2025, Apple reversed this allegation, claiming a persistent entity exists for the purposes of securing a bar and sanctions. The District Court branded Petitioners' reliance on Apple's own prior representations as "preposterous." By layering sanctions atop this refusal to resolve a documented contradiction, the court has prioritized procedural finality over the basic requirement of litigation consistency.

Most significantly, no court has ever ruled on the actual tying theory Petitioners presented way back in 2020. To sanction them for trying to get a ruling on a theory that was previously ignored is a structural error that grants courts the power to extinguish federal rights through silence. This silence is not adjudication. Moreover, the court's *res judicata* analysis completely ignored the rule of *Lawlor*, which prevents a prior judgment from extinguishing claims based on conduct that did not yet exist. Petitioners alleged years of post-judgment conduct—including new fee structures and retaliatory terms following the *Epic* litigation—that could not have been sued upon in the previous case. To treat the mere presence of the same defendant as a categorical bar to new conduct claims is to grant gatekeepers permanent immunity from antitrust scrutiny.

The panel's summary denial of mandamus represents a structural failure to apply the *Bauman* framework to a record defined by procedural suppression. By reciting the *Bauman* factors without applying them to the specific, silencing restraints imposed below, the Court has effectively issued a pocket veto of appellate oversight. If the panel's disposition stands, it signals that a district court may, at the behest of a dominant gatekeeper, utilize deferred fee quantification to exert existential pressure while structurally delaying any meaningful appellate review.

At the core of this institutional breakdown is a profound *Erie* and Rules Enabling Act error that allows federal procedure to abolish substantive state law protections. The district court permitted Apple to package what is, in all but name, a state law vexatious litigation claim as a so-called Rule 11 motion. This 'labels over substance' maneuver permitted a dominant defendant to bypass the substantive petitioning immunities and mandatory fee shifting protections of California's anti-SLAPP statute. When a federal court allows procedural rules to abridge substantive state law rights in this manner, it creates a loophole that permits powerful litigants to turn the sanctions process into a weapon of suppression. The record reflects that the district court recognized the nature of the motion as a vexatious litigation claim, yet refused to apply the corresponding state law protections, thereby punishing Petitioners for invoking the very immunity that exists to prevent retaliatory strikes.

Ultimately, the *Bauman* factors are met because the district court's structure creates an irreparable review gap that functions as a mechanism for exhaustion. By fixing sanctions liability but deferring the quantification of an estimated $20 million fee demand, and by imposing an immediate filing restraint that operates as an immediate prior restraint on court access, the court has ensured that the ordinary appeal route is a hollow promise. For a small developer, waiting years for a final judgment while under a motion filing ban and ruinous financial exposure is not a remedy; it is a forfeiture. If mandamus is not available to correct this posture, then

the writ has been effectively read out of the law in exactly the setting where it is most needed to prevent interim coercion from becoming outcome-determinative. The Court should grant rehearing to ensure that the rules of procedure are not used to extinguish federal rights through silence and gamesmanship.

### A. Intervening DOJ "Comply with Care" Initiative Confirms the Exceptional Importance of This Matter

After the District Court dismissal, the Department of Justice publicly announced a new Antitrust Division initiative aimed at the precise category of problem Petitioners have placed before this Court: the use of "obstruction and gamesmanship" by powerful parties and their outside counsel to distort process and frustrate merits adjudication in consequential antitrust matters. On August 29, 2025, Assistant Attorney General Gail Slater announced the Antitrust Division's "Comply with Care" Task Force and described tactics—such as privilege abuse and strategic delay—that convert procedure into a barrier to enforcement and adjudication. See Gail Slater, Assistant Att'y Gen., Antitrust Div., U.S. Dep't of Just., *Remarks at The Ohio State University Law School* (Aug. 29, 2025) (announcing "Comply with Care" and describing "obstruction and gamesmanship," including privilege abuse and delay tactics); Jody Godoy, *DOJ Antitrust Head Blasts Big Law for Obstructive Tactics*, Reuters (Aug. 29, 2025) (reporting launch of "Comply with Care" and remarks criticizing "tactics of obstruction and gamesmanship" by major law firms

representing large corporate targets, including in Big Tech matters); Kelly Garcia & James Harris Weingarten, *How to Comply with Care*, Antitrust L. Section (Am. Bar Ass'n) (Dec. 10, 2025) (describing the Task Force and its focus on production delays and privilege abuse).

The Task Force initiative is directly relevant because it targets the exact species of misconduct alleged in this record: the use of procedural maneuvers to defeat adjudication and thwart the implementation of meaningful injunctive relief. In announcing the task force, Assistant Attorney General Gail Slater specifically identified a California federal judge's findings that Apple engaged in an "obvious cover-up" to hide efforts to undermine the injunction won by Epic Games. This case tracks that playbook, insofar as Apple's improper attempts to beat an injunction, but the stakes are significantly higher. While the *Epic* injunction addressed mere "anti-steering" rules regarding payment commissions, Petitioners' underlying *per se* tying theory seeks a comprehensive liberation of the iPhone's software ecosystem. This fundamental democratization—analogous to the liberation of the printing press or the open standards of the VCR—represents a more existential challenge to the gatekeeper's control. Consequently, the gamesmanship deployed here is more desperate and more severe, utilizing a sanctions posture and filing restraints as tactical instruments to ensure that a challenge bigger than *Epic* is never heard.

Petitioners alleged significant violations of witness retaliation law in the underlying docket, as well as significant fraud on the court. A corporate founder was improperly blocked from participating in proceedings based on the false assertion that he was represented by counsel, and that the core tying theory has never been adjudicated because the litigation was diverted into procedural cul-de-sacs and then punished as "harassment" when Petitioners sought adjudication. In short: the overlap between this case and the Task Force is complete. DOJ announced an initiative to confront "obstruction and gamesmanship" that prevent adjudication in dominant-platform antitrust cases; Petitioners allege they are living the same pattern in this record—misrepresentation, procedural diversion, and sanctions

Why en banc review is warranted is precisely because the panel's one-paragraph denial—citing *Bauman* without applying it—effectively validates an improper playbook for gatekeepers and their counsel: win (or manufacture) a preclusion posture, then use a hybrid sanctions motion to convert continued petitioning into existential risk, impose immediate restraints, defer the financial "number" to extend coercion, and invoke the resulting "limbo" as proof that challengers are vexatious. The harm *Bauman* is designed to prevent is not merely an erroneous legal conclusion; it is a structure that makes meaningful review practically unavailable because the pressure operates now and the remedy is postponed.

The intervening DOJ announcement confirms that this is not merely Petitioners' rhetoric: the federal antitrust enforcer has now publicly identified "obstruction and gamesmanship" as a systemic threat in exactly these cases. A summary denial in this posture invites the worst inference: that even allegations of coercive staged sanctions, immediate filing restraints, and litigation conduct designed to suppress adjudication can never satisfy *Bauman* as a matter of law. En banc review is therefore required to apply Bauman to this record, and to make clear that procedural sanctions cannot become a substitute for merits adjudication of Sherman Act claims.

### *Alternative relief in aid of jurisdiction.*

If the Court is not inclined to grant relief on the writ, it should not allow these allegations of suppression to be disposed of in a way that effectively buries the record. The Court has authority under the All Writs Act and its inherent power to take steps necessary to protect the integrity of its proceedings and ensure that judicial process is not used to subvert federal law. See 28 U.S.C. § 1651(a). Where the record presents credible allegations of conduct that directly correlates with a stated federal enforcement priority—here, DOJ's announced focus on "obstruction and gamesmanship" by dominant platforms and their counsel—the Court may, as an aid to its jurisdiction and in protection of the judicial process, direct that the record be transmitted (See Declaration of Keith A. Mathews) to the appropriate enforcement

authority for whatever review DOJ deems appropriate. This alternative is especially warranted where, as Petitioners allege, the District Court's deferred sanctions structure creates a practical review gap and imposes immediate restraints before ordinary appellate mechanisms can provide meaningful relief. At minimum, the Court should ensure that the allegations—contradictory judicial representations, million dollar fee threats, and restraints on court access—are not rendered unexaminable through procedural exhaustion.

The alternative relief provides clarification that independently justifies en banc review. Without such clarification, Apple will inevitably characterize this posture as a merits vindication; the Court should make explicit that sanctions relating to Petitioners' anti-SLAPP invocation are not a merits adjudication and do not foreclose further Task Force inquiry into the underlying allegations. Absent some clarifying action by this Court, Apple will predictably argue that Petitioners' allegations were "adjudicated" and found meritless, when in fact the operative orders concerned res judicata rather than a merits determination of the underlying antitrust and retaliation allegations. The Court can prevent that injustice in two narrow, appropriate ways: first, by directing that the record be transmitted to the Antitrust Division's "Comply with Care" task force for whatever review DOJ deems appropriate; and second, by making clear in its disposition that sanctions imposed in connection with Petitioners' invocation of California anti-SLAPP protections are not

a merits adjudication and do not bar further inquiry into Petitioners' underlying allegations by appropriate institutions. Such clarity is necessary to ensure that staged sanctions do not become a substitute for adjudication, and that procedural rulings are not later repurposed as de facto substantive exoneration.

## V.    CONCLUSION

For the reasons set forth above, Petitioners respectfully request that the Court grant the petition for rehearing en banc, vacate the January 28, 2026 order, and issue the writ of mandamus as requested in the underlying petition. In the alternative, Petitioners request that the Court formally refer this record to the DOJ's "Comply with Care" Task Force or issue a declaration that the underlying allegations of improper conduct of platform Sherman act evasion remain unadjudicated.

Dated: February 11, 2026                    AMERICAN WEALTH PROTECTION

/s/ Keith Mathews
KEITH MATHEWS
1000 Elm Street #800
Manchester, NH 03101
(603) 622-8100
*Attorneys for Petitioners*

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(A) because excluding the parts of the petition exempted by Fed. R. App. P. 32(f), it contains 3,427 words.

2. This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: February 11, 2026          AMERICAN WEALTH PROTECTION

/s/ Keith Mathews
KEITH MATHEWS
1000 Elm Street #800
Manchester, NH 03101
(603) 622-8100
*Attorneys for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2026, I electronically filed the foregoing Petition for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the CM/ECF system. I further certify

that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: February 11, 2026        AMERICAN WEALTH PROTECTION

/s/ Keith Mathews

KEITH MATHEWS
1000 Elm Street #800
Manchester, NH 03101
(603) 622-8100
*Attorneys for Petitioners*

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

In re CORONAVIRUS REPORTER CORP., et al., Petitioners. No. 25-7761

**DECLARATION OF KEITH MATHEWS IN SUPPORT OF PETITION FOR REHEARING EN BANC**

I, KEITH MATHEWS, declare as follows:

1. I am an attorney at law licensed to practice in the State of New Hampshire and am counsel of record for Petitioners in the above-captioned matter. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.
2. I submit this declaration to provide the Court with a true and correct copy of a "Report to the Department of Justice Antitrust Division" authored by me on behalf of Petitioners, which is attached hereto as Exhibit A.
3. As part of the alternative relief requested in the accompanying Petition for Rehearing En Banc, Petitioners respectfully request that this Court—in aid of its jurisdiction and to protect the integrity of the judicial process—direct the transmission of the record of this case to the Department of Justice's "Comply with Care" Task Force.
4. The attached report (Exhibit A) is submitted to the Court to identify the specific allegations of "obstruction and gamesmanship" that Petitioners believe warrant such a transmission, including contradictory judicial representations regarding corporate identity, the use of ruinous fee threats, and the suppression of federal tying claims through improper means including but not limited to witness intimidation and retaliation.
5. These allegations correlate directly with the federal enforcement priorities announced by the Department of Justice on August 29, 2025, which specifically target the category of Big Tech and Big Law gamesmanship documented in this record.
6. This declaration and the accompanying exhibit are provided to demonstrate that the request for a referral is a formal component of the relief sought and is intended to ensure that the allegations of improper conduct—which have remained unadjudicated in the district court—are preserved for examination by the appropriate enforcement authorities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 11th day of February, 2026, at Manchester, New Hampshire.

/s/ Keith Mathews
Keith Mathews
American Wealth Protection
Attorneys for Petitioners

**EXHIBIT A**

**(Draft Report to the Department of Justice)**

**VIA OVERNIGHT COURIER**

February 11, 2026

United States Department of Justice Antitrust Division
Attn: "Comply with Care" Task Force
Assistant Attorney General Gail Slater
950 Pennsylvania Avenue, NW
Washington, DC 20530

Re: Submission to "Comply with Care" Task Force; *In re Coronavirus Reporter Corp., et al.*, No. 25-7761 (9th Cir.); N.D. Cal. No. 3:24-cv-08660-EMC

Dear Assistant Attorney General Slater and Members of the "Comply with Care" Task Force:

I am writing to you on behalf of a group of independent developers and medical visionaries who have spent the last five years in a singular struggle to preserve the freedom of the American internet. Our case presents a clear example of the precise problem you publicly described when announcing "Comply with Care": Big Tech and Big Law litigation tactics to "delay, obstruct, or play games," thereby making fair adjudication of serious antitrust claims practically unattainable. Gail Slater, Assistant Att'y Gen., Antitrust Div., U.S. Dep't of Just., *Assistant Attorney General Gail Slater Delivers Remarks to the Ohio State University Law School* (Aug. 29, 2025).

Apple's ironclad control over its ecosystem does more than just stifle competition; it blocks the very purpose of the internet—distributed, democratized information exchange. In an open system, free from Apple's gatekeeper interference, we would see breakthroughs in collaborative technologies that are currently being suppressed. Open source applications in medical research, distributed AI for drug discovery, and decentralized blockchain initiatives are being held back by a monopolist that prioritizes its own strategic and even political purposes over innovation. We must consider the social ramifications of this control: Truth Social might have seen an order of magnitude greater adoption if Apple did not pull the strings of distribution to suit its own agenda. Similarly, the TikTok fiasco and the resulting security concerns might never have evolved if a competitive market had been allowed to produce safer, American made video sharing software. Competition improves quality and outcomes, but Apple's self-serving gatekeeping prevents these breakthroughs from ever reaching the public. It's hard to even imagine an internet without Apple's curbs, as this is all anyone has known since 2007.

In 2020, we developed a straightforward antitrust theory intended for rapid adjudication and resolution of the Apple problem. Our team—which includes a renowned former NASA mission cardiologist for John Glenn— believed a court could evaluate our tying/bundling theory efficiently

and issue an injunction within months, not years. With the DOJ's help it is not too late to finally obtain this long overdue injunction.

Our per se tying framework is straightforward common sense that a hardware device (iPhone) shouldn't be exclusively bundled with (and reliant upon) a single App Store. In other words, there must be open software distribution just like there were open printing presses and open consumer TV/VCRs. This sort of tying has been considered pernicious since *Northern Pacific Railway Co. v. United States*, 356 U.S. 1 (1958). To date, an injunction like we proposed in 2020 remains the most capable of effecting immediate, meaningful democratization of the American internet. For nearly a century, Americans have had the freedom to watch what they choose on televisions and VCRs without the device manufacturer deciding what speech may be viewed or what sources may be accessed. There is no debate that this precedent allowed the American movie industry, i.e. Hollywood, to attain worldwide leadership, and by analogy, internet devices should similarly be open. Smartphones are now the principal gateway to creative media and distribution, and even analogous to a modern printing press. History would not judge it well if a single company controlled every printing press; likewise, a society should not accept that one company effectively controls the practical pathways to modern speech and services over the internet.

Senator Sherman recognized the central danger all the way back in 1890: once monopoly power embeds deeply, it becomes far harder and more costly to unwind. His warning was not academic: "If we will not endure a king as a political power, we should not endure a king over the production, transportation, and sale of any of the necessaries of life." 21 Cong. Rec. 2457 (1890) (statement of Sen. Sherman). That is the threat we believe the government ignores by allowing Apple's roughly twenty year gatekeeper dominance to persist without meaningful injunctive constraint.

Apple had the opportunity to become what it is only because the United States did its job in earlier eras of platform and infrastructure control. The breakup of "Ma Bell" and enforcement against Microsoft were not anti-business; they were pro-competition interventions that enabled enormous innovation. See United States v. Am. Tel. & Tel. Co., 552 F. Supp. 131 (D.D.C. 1982) (Modification of Final Judgment proceedings); Fed. Judicial Ctr., *The Breakup of "Ma Bell": United States v. AT&T*; United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001). There is no good reason Apple should receive a free pass beyond the two decades it already has. The AI era is here. If gatekeepers are not checked now, information distribution will become more absolute. This is a moment for decisive competition policy.

Our mandamus record reflects five years of passionate advocacy for these freedoms. We believe we were harshly and improperly sanctioned for doing so. Our experience in the San Francisco Federal District Court and Ninth Circuit reveals a blueprint for silencing important advocacy. Apple has fraudulently misrepresented the existence of our company to the courts—claiming we were a "null entity" when it suited their damages defense, then claiming we were "fully present" to secure a dismissal. They have intimidated our witnesses and retaliated against our partners. We call upon the Task Force to fully investigate our concerns, and achieve its goal of bringing fairness to these historical antitrust deliberations.

Apple's current posture—an arrogation of control over the principal gateway device—does not merely inconvenience developers; it blocks the central promise of the internet itself: distributed,

democratized exchange of information. The Sherman Act exists for precisely this moment. We call on the Department of Justice to realize the full potential of American innovation through these prompt injunctive measures.

We request that the Task Force review the underlying record promptly, identify any conduct that falls within the initiative's scope, and consider appropriate enforcement action. We specifically ask the Division to implement prompt injunctive relief and other remedies to restore competition in smartphone internet distribution, to reduce gatekeeper censorship power. We emphasize urgency. In markets defined by network effects and economies of scale, every year of delay increases the eventual cost of restoring competition.

We are prepared to provide any additional supporting information requested for the concerns summarized above.

Respectfully submitted,

/s/ Keith A. Mathews

KEITH A. MATHEWS
American Wealth Protection
1000 Elm Street, Suite 800
Manchester, NH 03101
(603) 622-8100
Counsel for Coronavirus Reporter Corporation
and Greenflight Venture Corporation